**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-3294 RMR

COLORADO CONSERVATION ALLIANCE,
a Colorado Nonprofit Corporation,
CHRISTOPHER JURNEY,
and MICHAEL CLARK,

      Petitioners,

v.

UNITED STATES FISH AND WILDLIFE SERVICE,
COLORADO PARKS AND WILDLIFE COMMISSION,
COLORADO DIVISION OF PARKS AND WILDLIFE,
DAN GIBBS, in his official capacity as Executive Director
of the Colorado DEPARTMENT OF NATURAL RESOURCES,
and JEFF DAVIS, in his official capacity as Director of
COLORADO DIVISION OF PARKS AND WILDLIFE.

      Respondents.

and

DEFENDERS OF WILDLIFE, CENTER FOR BIOLOGICAL
DIVERSITY, HUMANE SOCIETY OF THE UNITED STATES,
WESTERN WATERSHEDS PROJECT AND WILDEARTH
GUARDIANS,

      Respondent Intervenors.

---

**PETITIONERS' SECOND MOTION TO TAKE JUDICIAL NOTICE AND
MEMORANDUM IN SUPPORT**

---

      Petitioners Colorado Conservation Alliance, Inc. ("CCA"), Christopher Jurney, and

Michael Clark (collectively the "Petitioners") hereby notify the Court that they bring this

Second Motion to ask the Court to take judicial notice of the 2024-2025 Colorado Gray

Wolf Annual Report published by Colorado Parks and Wildlife (" 2024-2025 Annual Report"), and specifically, of the facts provided therein that the United States Fish and Wildlife Service ("USFWS") provided Colorado Parks and Wildlife with a Wolf Compensation and Conflict Mitigation Grant in the amount of $75,000.00, and that Colorado received an additional 2.5 million dollars from the NRCS Regional Conservation Partnership Program—"Stewarding the Working Wild" award between April 1, 2024 and March 31, 2025. Pet'rs. Appx. at 11. Counsel for the Petitioners discovered this information on July 21, 2025. Pet'rs Appx. at 2, ¶ 4 (Declaration of Gary R. Leistico, hereinafter "Leistico Decl."). The 2024-2025 Annual Report was originally released on June 27, 2025. *Id.* Petitioners met and conferred with all opposing counsel regarding the instant Motion via email on July 31, 2025. *Id.* at 2, ¶ 5. All Respondents and Respondent-Intervenors oppose this Motion. *Id.*

Petitioners note that on November 21, 2024, they filed their first Motion to Take Judicial Notice in this matter. ECF No. 88. That Motion requested the Court to take judicial notice of the 2023-2024 Colorado Gray Wolf Annual Report published by Colorado Parks and Wildlife, and specifically the portion providing that USFWS provided Colorado Parks and Wildlife with a Wolf Compensation and Conflict Mitigation Grant in the amount of $109,000.00 during its first year of wolf introductions. *Id.*; *see also* ECF No. 88-1 at 10. The Court has not yet ruled on that Motion.

This Second Motion to Take Judicial Notice, concerning the 2024-2025 Annual Report, involves many of the same—and, in most instances, identical—arguments as the Motion concerning the 2023-2024 Annual Report. To ensure that they do not run afoul of

2

D.C. Colo. L. Civ. R. 7.1(i)—providing that Motions must be concise and must not be redundant—Petitioners incorporate the arguments contained in their first Motion to Take Judicial Notice as if fully set out herein and as if applied to the 2024-2025 Annual Report (and specifically the portion of the 2024-2025 Annual Report providing that USFWS provided Colorado Parks and Wildlife with a Wolf Compensation and Conflict Mitigation Grant in the amount of $75,000.00, and that Colorado received an additional 2.5 million dollars from the NRCS Regional Conservation Partnership Program—"Stewarding the Working Wild" award between April 1, 2024 and March 31, 2025). ECF Nos. 88, 88-1. This Motion is in addition to and supplementary to Petitioners' original Motion. Petitioners briefly and respectfully note the following regarding the instant Motion.

## ARGUMENT

**I.      THIS COURT SHOULD TAKE JUDICIAL NOTICE OF THE 2024-2025 ANNUAL REPORT AND THE FACTS PROVIDED THEREIN THAT USFWS PROVIDED COLORADO PARKS AND WILDLIFE WITH A WOLF COMPENSATION AND CONFLICT MITIGATION GRANT IN THE AMOUNT OF $75,000.00, AND THAT COLORADO RECEIVED AN ADDITIONAL 2.5 MILLION DOLLARS FROM THE NRCS REGIONAL CONSERVATION PARTNERSHIP PROGRAM—"STEWARDING THE WORKING WILD" AWARD BETWEEN APRIL 1, 2024 AND MARCH 31, 2025.**

To briefly reiterate the legal standard for the Court's convenience, under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Additionally, "[t]he court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the

court is supplied with the necessary information." Fed. R. Evid. 201(c). Finally, "[t]he court

may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

Federal Rule of Evidence 201 applies to adjudicative facts—not legislative facts—

and adjudicative facts are the facts of the particular case. *See U.S. v. Wolny*, 133 F.3d

758, 764 (10th Cir. 1998). Accordingly, "[t]he contents of an administrative agency's

publicly available files…traditionally qualify for judicial notice, even when the truthfulness

of the documents on file is another matter." *Winzler v. Toyota Motor Sales U.S.A., Inc.*,

681 F.3d 1208, 1213 (10th Cir. 2012) (additional citations omitted). Lastly, the Court is not

precluded from taking judicial notice in cases where review is generally limited to an

administrative record, as long as the criteria for taking judicial notice and supplementing

the administrative record are satisfied. *American Bankers Ass'n v. National Credit Union

Admin.*, 347 F.Supp.2d 1061 (D. UT 2004).[1]

Here, taking judicial notice of the 2024-2025 Annual Report and of the facts

provided therein that the United States Fish and Wildlife Service ("USFWS") provided

Colorado Parks and Wildlife with a Wolf Compensation and Conflict Mitigation Grant in

the amount of $75,000.00, and that Colorado received an additional 2.5 million dollars

from the NRCS Regional Conservation Partnership Program—"Stewarding the Working

---

[1] The criteria for supplementing the administrative record are "(1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; or (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong." *Id.* at 1066 (additional citations and quotations omitted).

Wild" award between April 1, 2024 and March 31, 2025 is appropriate. As noted in Petitioners' First Motion to Take Judicial Notice concerning the 2023-2024 Annual Report (ECF No. 88), the 2024-2025 Annual Report is also a report created and published by Respondents in this case (and therefore the accuracy of the information cannot be reasonably questioned); Petitioners are requesting the Court to take judicial notice of this information and Petitioners are providing the entirety of this information to the Court; there are no timing issues because this is a live controversy; and the 2024-2025 Annual Report contains adjudicative facts relevant to this specific case (not legislative facts). The 2024-2025 Annual Report therefore satisfies the judicial notice criteria.

Additionally, and also as noted in Petitioners' First Motion to Take Judicial Notice concerning the 2023-2024 Annual Report (ECF No. 88), the 2024-2025 Annual Report meets multiple criteria for supplementation of the administrative record in identical fashion to the 2023-2024 Annual Report. The first factor—"the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials" (*American Bankers Ass'n*, 347 F.Supp.2d at 1066)—is met because the administrative record in this matter provides that federal funding will be used to support Colorado's wolf introduction efforts, but it does not explain how much funding will be utilized. *See* ECF No. 88 at 6-7. An extremely significant part of this case is about how much federal involvement was present in Colorado's wolf introduction efforts. *See e.g.*, ECF No. 73; *Zeppelin v. Federal Highway Admin.*, 293 F.Supp.3d 1267, 1284 (D. Colo. 2017). The 2024-2025 Annual Report, in addition to the 2023-2024 Annual Report, confirms that Colorado has obtained and/or utilized approximately 2.7 million dollars in federal funding

to support its wolf introduction efforts within the first two years of the wolf introduction process. Respondents' decision to not conduct an analysis under the National Environmental Policy Act of 1969 ("NEPA")—and whether this decision is arbitrary, capricious, an abuse of discretion, or is otherwise not in accordance with law under the Administrative Procedure Act—for wolf introduction cannot be explained or reviewed properly or adequately without this definitive information regarding federal funding. The first criterion is therefore satisfied.

Additionally, the fifth criterion—"evidence coming into existence after the agency acted demonstrates the actions were right or wrong" (*American Bankers Ass'n*, 347 F.Supp.2d at 1066)—is also satisfied. Identical to the 2023-2024 Annual Report, the 2024-2025 Annual Report came into existence after Respondents introduced wolves in Colorado; it is directly relevant to whether Respondents should have undertaken an environmental analysis under NEPA for wolf introduction in Colorado because it is direct evidence of federal funding supporting wolf introduction; and it weighs heavily in a finding that Respondents should have conducted an environmental analysis under the National Environmental Policy Act ("NEPA") for wolf introduction in Colorado, and their decision not to therefore violates the Administrative Procedure Act ("APA"). *See* ECF No. 88 at 7-8. Therefore, the fifth criterion is also satisfied. As a result, and overall, Petitioners respectfully request this Court to take judicial notice of the 2024-2025 Annual Report and of the facts provided therein that USFWS provided Colorado Parks and Wildlife with a Wolf Compensation and Conflict Mitigation Grant in the amount of $75,000.00, and that Colorado received an additional 2.5 million dollars from the NRCS Regional Conservation

Partnership Program—"Stewarding the Working Wild" award between April 1, 2024 and March 31, 2025.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request this Court to grant their Motion.

Respectfully submitted July 31, 2025.

> */s/ Gary R. Leistico*
> Gary R. Leistico
> Minnesota State Bar No. 24448X,
> *Admitted in the U.S. District Court for the District of Colorado*
> LEISTICO & ESCH, PLLC
> P.O. Box 365
> Clear Lake, MN 55319
> Direct: (320) 267-6721
> Fax: (763) 392-0757
> Email: gleistico@leisticoesch.com
>
> ATTORNEYS FOR PETITIONERS

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2025, I electronically served a true and correct copy of the foregoing PETITIONERS' SECOND MOTION TO TAKE JUDICIAL NOTICE by filing it with the Clerk of Court using the CM/ECF system.

_/s/ Gary R. Leistico_
Gary R. Leistico